Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1915 | **DATE** | 6/2/2004 |
| **CASE TITLE** | Pamela Austin-Edwards vs. Loyola University Medical Center | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Defendant Loyola University Medical Center's motion for summary judgment is granted in its entirety. Status hearing set for 7/26/04 is stricken. Any other pending dates are stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | Document Number |
| | Notices mailed by judge's staff. | | JUN 0 3 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | | 48 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | JUN 0 3 2004 | |
| | TH✓ | courtroom deputy's initials | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PAMELA AUSTIN-EDWARDS, )
)
        Plaintiff, )
)
v. )   No. 03 C 1915
)
LOYOLA UNIVERSITY MEDICAL )
CENTER, )
)
        Defendant. )

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Pamela Austin-Edwards filed a three count First Amended Complaint ("FAC") against Loyola University Medical Center ("Loyola"), alleging that Loyola violated her civil rights under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, and 42 U.S.C. § 1981. In Count I, Plaintiff alleges that Loyola discriminated against her on the basis of her race. In Count II, Plaintiff alleges that Loyola breached an implied and constructive contract by failing to provide Plaintiff with a non-hostile work environment. In Count III, Plaintiff alleges that Loyola intentionally inflicted emotional distress on Plaintiff. Loyola moved for summary judgment on all counts. For the reasons stated herein, summary judgment is granted in favor of Loyola on all counts.

## LEGAL STANDARDS

I. **Summary Judgment**

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica,* 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S. Ct. at 2510. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23, 106 S. Ct. 2548, 2552 (1986). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Employment Opportunity Comm'n v. Roebuck & Co.,* 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the nonmoving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.,* 282 F .3d 467, 471 (7th Cir. 2002).

## II. Local Rule 56.1

The Court first addresses Plaintiff's failure to comply with the requirements of Local Rule 56.1, which governs summary judgment briefing in the Northern District of Illinois. L.R. 56.1. Local Rule 56.1(a)(3) requires the moving party to provide a "statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to a judgment as a matter of law." L.R. 56.1(a)(3). The opposing party must then file a "supporting memorandum of law," L.R. 56.1(b)(2), and "a concise response to the movant's statement" that includes, *inter alia,* "a response to each numbered paragraph in the moving party's statement."

L.R. 56.1(b)(3)(A). "All material facts set forth in the [Rule 56.1] statement . . . will be deemed admitted unless controverted by the statement of the opposing party." L.R. 56.1(b)(3)(B). The opposing party may file a separate "statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment." *Id.*

Plaintiff has failed to comply with Local Rule 56.1 in several respects. First, Plaintiff responded to only a fraction of Loyola's 99 statements of fact.[1] The statements in Plaintiff's response include impermissible argument, conclusory statements, and additional, nonresponsive information that belongs, if anywhere, in a separate statement of additional material facts pursuant to Local Rule 56.1(b)(3)(B). Second, Plaintiff failed to file a memorandum of law in opposition to summary judgment. Finally, Plaintiff submitted several typewritten pages in which Plaintiff makes numerous statements. (R. 46-1, Pl.'s Rule 56.1 Resp.) There is no indication, however, that Plaintiff made these statements under oath subject to penalty of perjury. Moreover, Plaintiff cites no record evidence in support of any of these statements.

Accordingly, the Court will deem admitted each of Loyola's statements of material fact that is supported by the record to which Plaintiff failed to respond. *Fischer v. Ameritech*, No. 98 C 7470, 2002 WL 1949726, at *4 (N.D. Ill. Aug. 23, 2002). Although this Court is mindful of Plaintiff's unrepresented status, "[e]ven *pro se* litigants must follow the rules." *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002); *see also Davis v. Ruby Foods, Inc.*, No. 00 C 5578, 2002 WL 1285797, at *1 (N.D. Ill. June 11, 2002) (deeming facts admitted where *pro se*

---

[1] Specifically, Plaintiff responded to the following paragraphs: 19, 20, 23, 25, 26, 27, "30 & 31," 34, 36, 42, "45-50," and 73. The Court notes that Plaintiff improperly responded to multiple statements of fact with a single response.

3

plaintiff's submission did not conform to Local Rule 56.1).[2]

Plaintiff's failure to comply with Local Rule 56.1, however, does not result in an automatic grant of summary judgment in favor of Loyola. The Court still must evaluate all facts in the light most favorable to Plaintiff, the non-moving party. *O'Donnell v. City of Chicago*, No. 02 C 1847, 2003 WL 22339285, at *1 (N.D. Ill. Oct. 14, 2003).

## BACKGROUND

### I. Plaintiff's Employment At Loyola

Loyola hired Plaintiff, an African American, as a part-time Patient Transporter in 1999. (R. 40-1, Def.'s Rule 56.1 Stmt. ¶ 14.) In 2001, Plaintiff applied for and received a position as a part-time Visitor Control Liaison in the Maternity/Newborn Unit. (*Id.*) A Visitor Control Liaison staffs the front desk, oversees visitors, and monitors the newborns in the unit. (*Id.* ¶ 17.)

Christine Murphy, the Nurse Manager for the Maternity/Newborn Unit, hired Plaintiff as a Visitor Control Liaison and served as Plaintiff's direct supervisor. (*Id.* ¶ 15.) Murphy had ultimate authority to set the work schedules for the Visitor Control Liaisons. (*Id.* ¶ 21.) Loyola told the Visitor Control Liaisons that their work schedules were not final until Murphy posted the final schedule. (*Id.*) The posted work schedule for the period from December 2, 2001 through January 12, 2002 was a "Holiday Schedule" and had a separate Notice attached to it directing Visitor Control Liaisons to "not make any plans based on the requested Schedule," and to "[p]lease wait for the approved copy to be posted." (*Id.* ¶ 22.)

---

[2] Local Rule 56.2 requires a defendant who files a motion for summary judgment against a *pro se* plaintiff to provide the *pro se* plaintiff with a plainly worded notice explaining a summary judgment motion, local rules governing such motions, and the consequences if the plaintiff fails to respond to the motion. L.R. 56.2. Loyola served and filed the required notice. (R. 45-1, Notice to *Pro Se* Plaintiff.)

4

## II. Plaintiff Failed To Work Her Assigned Shift

Murphy initially assigned Plaintiff to work from 7:00 a.m to 3:30 p.m. on December 24, 2001. On or about December 21, 2001, Murphy posted the final work schedule in which she reassigned Plaintiff to work from 3:00 p.m. to 11:30 p.m. (*Id.* ¶ 23.) Plaintiff did not work her assigned shift. (*Id.* ¶ 30.) Rather, Plaintiff switched her shift with another employee and worked from 7:00 a.m to 3:30 p.m. on December 24, 2001. (*Id.* ¶ 31.) Plaintiff did not notify Murphy of the switch and did not obtain Murphy's prior approval before working a different shift than the one Murphy assigned to her. (*Id.* ¶¶ 25-27.)

On December 27, 2001, Murphy issued Plaintiff a verbal warning for failing to work her assigned shift and for failing to notify Murphy and to obtain prior approval before working a different shift. (*Id.* ¶¶ 38-39.) During this meeting, Plaintiff told Murphy that she was dissatisfied with her job and that she was resigning. (*Id.* ¶ 45.) Plaintiff filled out and signed a "Letter of Voluntary Resignation." (*Id.* ¶ 46.) Murphy did not terminate Plaintiff. (*Id.* ¶ 47.)

## III. Plaintiff Unsuccessfully Reapplied For Employment At Loyola

After resigning from her position as a Visitor Control Liaison, Plaintiff reapplied to Loyola for a position as a Rehabilitation Technician and a position as a Sales Representative. (*Id.* ¶ 61.) Loyola did not hire Plaintiff for either position. (*Id.* ¶ 61.) At the time Plaintiff applied, there were two open Rehabilitation Technician positions and seven applicants. (*Id.* ¶ 65.) Loyola ultimately hired an African American and a white applicant more qualified than Plaintiff to fill the Rehabilitation Technician positions. (*Id.* ¶¶ 66-67.) At the time Plaintiff applied, there were 29 open Service Representative positions and 270 applicants. (*Id.* ¶ 69.) Loyola ultimately hired only eighteen new Service Representatives, including eight African

5

Americans, three Hispanics, and seven Caucasian applicants who were more qualified than Plaintiff. (*Id.* ¶ 69.) Loyola has no record of Plaintiff applying to any other positions at Loyola. (*Id.* ¶ 70.)

## IV. Loyola's Policies and Employee Handbook

Loyola has a written policy prohibiting employment discrimination on the basis of race according to federal and state anti-discrimination laws and statutes. (*Id.* ¶ 4.) The written policy establishes Loyola as an Equal Opportunity/Affirmative Action employer. (*Id.* ¶ 4.)

Loyola also published and distributed to all employees an "Employee Handbook" which set forth the rules governing employees' conduct and responsibilities at Loyola. (*Id.* ¶ 5.) The Employee Handbook required employees to "fulfill all responsibilities and service expectations of the job as contained in the job description and/or as further defined in work instructions given by the supervisor" and to "report to work at the scheduled time." (*Id.* ¶¶ 6-7.) The Employee Handbook further provided that "[l]ength and time of shifts and assignments to a specific shift are set by the department to meet operational needs and are subject to change," and that "absence for personal business is allowed only by prior arrangement." (*Id.* ¶¶ 6, 8.) The Employee Handbook warned that employees may be disciplined when "they violate established departmental and University/Medical Center policies and procedures," and that violations of standards of employee conduct and departmental work rules may result in discipline that may consist of an oral warning, written warning, suspension or termination. (*Id.* ¶ 7.) Plaintiff received a copy of the Employee Handbook and agreed to become familiar with and abide by Loyola's policies, procedures, and work rules. (*Id.* ¶ 5.)

Loyola also published and distributed a "Corrective Action and Work Improvement"

policy governing discipline of employees where employees fail to meet work performance standards or adhere to the written rules of conduct. (*Id.* ¶ 11.) Pursuant to this policy, "Corrective Action is utilized to document and address incidents of . . . failure to meet attendance and punctuality standards, or a specific situation where an employee failed to follow work instructions or fulfill job duties." (*Id.* ¶ 13.) The Policy further provided that "[c]ounseling is used when a manager verbally counsels an employee regarding work performance deficiencies and/or misconduct. . . . [A] written record of the discussion noting the date, event, and recommended action should be placed in the employee's departmental file for future reference." (*Id.* ¶ 13.)

## ANALYSIS

### I. Plaintiff Cannot Prevail On Her Discrimination Claim

A plaintiff bringing a claim under Title VII can prove discrimination using either the "direct" method or the indirect, burden-shifting method outlined by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817 (1973). *Cerutti v. BASF Corp.*, 349 F.3d 1055, 1060-61 (7th Cir. 2003). The Court applies the same standards to Title VII claims and claims brought under Section 1981. *Gonzalez v. Ingersoll Milling Mach. Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998).

In her FAC, Plaintiff claims that Loyola discriminated against her by constructively discharging her because of her race. (R. 20-1, FAC ¶ 20.) Plaintiff also appears to claim that Loyola, through Murphy, discriminated against her by issuing a verbal warning to her, changing her work shift, and retaliating against her for complaining to Murphy's supervisor about Murphy's alleged unfairness to Plaintiff. None of these claims survives summary judgment.

## A. There Is No Direct Evidence Of Discrimination

Direct evidence is "evidence which if believed by the trier of fact, will prove the particular fact in question without reliance on inference or presumption." *Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 443 (7th Cir. 1997) (quoting *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir. 1997)). "Direct evidence essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus." *Cerutti,* 349 F.3d at 1061 (quoting *Rogers v. City of Chicago,* 320 F.3d 748, 753 (7th Cir. 2003)).

Drawing all inferences in Plaintiff's favor, Plaintiff fails to produce any direct evidence of discrimination. Murphy is the only Loyola employee that Plaintiff accuses of discrimination. (R. 40-1, Def.'s Rule 56.1 Stmt. ¶ 62.) Plaintiff admits that Murphy never made any race-related statements to her. (*Id.* ¶¶ 73, 76.) There are simply no facts that constitute direct evidence of discrimination. Accordingly, to survive summary judgment, Plaintiff must establish a *prima facie* case of discrimination under the burden-shifting method of *McDonnell Douglas*.

## B. Plaintiff Cannot Establish A *Prima Facie* Case Of Discrimination Under The Burden-Shifting Method Of *McDonnell Douglas*

Plaintiff fares no better under the indirect method of *McDonnell Douglas*. To establish a *prima facie* case of discrimination, Plaintiff must show that (1) she is a member of a protected class, (2) she reasonably performed to Loyola's expectations, (3) she was subject to an adverse employment action, and (4) she was treated differently from similarly situated employees who were outside of her protected group. *See McDonnell Douglas,* 411 U.S. at 802, 93 S. Ct. 1817. Plaintiff cannot establish a *prima facie* case of discrimination with respect to the alleged constructive discharge, verbal warning, shift change, or retaliation.

8

### 1. Loyola Did Not Constructively Discharge Plaintiff

To establish that Loyola constructive discharged her, Plaintiff must first "demonstrate that she was, in fact, constructively discharged—*i.e.*, that the defendant made the working conditions so intolerable as to force a reasonable employee to leave. Once a plaintiff has shown that a constructive discharge occurred, [she] must prove, as with any other discharge claim under Title VII, that [she] was constructively discharged because of [her] membership in a protected class." *Vitung v. Multistate Tax Comm'n*, 88 F.3d 506, 517 (7th Cir. 1996.) Working conditions for constructive discharge must be even more egregious than the high standard for hostile work environment because "in the 'ordinary' case, an employee is expected to remain employed while seeking redress." *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1050 (7th Cir. 2000) (quoting *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 886 (7th Cir. 1998)).

There are no facts showing that Plaintiff suffered working conditions that were "so intolerable as to force a reasonable person to leave." Neither Murphy nor anyone else at Loyola made race-related comments to Plaintiff. Plaintiff appears to complain that Murphy allowed a family to bring an unrelated child into a visiting ward and another to remain in a visiting area rather than stay in the staging area as Plaintiff directed; instructed Plaintiff to sign off of her computer when she went to lunch; did not allow Plaintiff to go to the bathroom or accept personal telephone calls during working hours; and generally was not cordial or friendly to Plaintiff. (R. 40-1, Def.'s Rule 56.1 Stmt. ¶¶ 74, 85-93.) There is no evidence that Murphy engaged in any of this conduct because Plaintiff is African American, or that Murphy treated

Plaintiff differently than she treated similarly situated white employees.[3] Drawing all factual inferences in favor of Plaintiff, these working conditions are insufficient as a matter of law to support an inference of constructive discharge. Because Plaintiff cannot establish that Loyola constructively discharged her, Plaintiff cannot base her discrimination claim on her separation from Loyola's employment.

### 2. Loyola Did Not Discriminate Against Plaintiff By Issuing A Verbal Warning To Her

Plaintiff cannot base her discrimination claim on the verbal warning that Murphy issued to Plaintiff for two reasons: (1) the verbal warning does not qualify as an adverse employment action; and (2) Plaintiff cannot establish that she was performing according to Loyola's reasonable expectations when she received the warning.

#### a. The Verbal Warning Is Not An Adverse Employment Action

An adverse employment action involves a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Fortier v. Ameritech Mobile Communications, Inc.*, 161 F.3d 1106, 1112 n.7 (7th Cir. 1998). "[N]ot everything that makes an employee unhappy is an adverse action." *Smart v. Ball State Univ.*, 89 F.3d 437, 441 (7th Cir. 1996).

The verbal warning did not cause any change, significant or otherwise, in Plaintiff's employment status, work responsibilities, salary, or employment benefits. (R. 40-1, Def.'s Rule

---

[3] The evidence shows that Murphy had authority to determine whether to allow an unrelated child in a patient's room and whether to allow visitors in the "staging room" area. (*Id.* ¶ 88.) The evidence further shows that departmental rules restricted employees' bathroom breaks and personal use of telephones, and required employees to sign off of their computers when they went to lunch. (*Id.* ¶¶ 89-91.) There is no evidence that Murphy applied these departmental rules to Plaintiff any differently than she applied them to similarly situated white employees.

56.1 Stmt. ¶ 44.) "[U]nfair reprimands or negative performance evaluations, unaccompanied by some tangible job consequence, do not constitute adverse employment actions." *Grube v. Lau Indus., Inc.*, 257 F.3d 723, 729 (7th Cir. 2001); see also *Kersting v. Wal-Mart Stores, Inc.*, 250 F.3d 1109, 1118-19 (7th Cir. 2001). There is no evidence that the verbal warning was accompanied by a "tangible job consequence" other than Plaintiff's voluntary resignation, which, as already discussed, was not a constructive discharge.

### b. Plaintiff Cannot Establish That She Was Performing According to Loyola's Expectations

The undisputed facts show that Plaintiff was not meeting Loyola's legitimate expectations at the time of the alleged adverse employment action. Departmental rules required employees to work their assigned shifts and to give prior written notice and obtain prior approval before switching shifts with another employee. It is undisputed that Plaintiff did not work her assigned shift, and there is no evidence that she gave Loyola prior written notice or obtained Loyola's prior approval before switching shifts with another employee.

Plaintiff states in her unsworn statement that she told an unidentified "head nurse" that she switched shifts with another employee, and that the head nurse approved of the switch and called Plaintiff at home to confirm the switch.[4] Plaintiff cites no record evidence to support this assertion, however, and cannot even identify the "head nurse" that allegedly approved the switch. Importantly, Plaintiff does not dispute that she never gave prior *written* notice to anyone at Loyola, as required by the departmental rules. Plaintiff also does not dispute that she never told

---

[4] The Court need not even address this additional information, because it belongs in a separate statement of facts pursuant to Local Rule 56.1(b)(3)(B). The statements do not qualify as an affidavit because there is no indication that Plaintiff made the statements under oath.

11

Murphy about the switch or obtained Murphy's prior consent before switching shifts. Given Plaintiff's failure to work her assigned shift and her failure to follow proper procedures for switching shifts with another employee, Plaintiff cannot demonstrate that she was performing according to Loyola's legitimate expectations when she received the verbal warning. Accordingly, Plaintiff cannot show that Loyola discriminated against her by issuing a verbal warning.

### 3. The Shift Change Is Not An Adverse Employment Action

Plaintiff alleges in her FAC that "Ms. Murphy routinely altered Plaintiff's work schedule at the last minute, contrary to written hospital policy, to cause undue inconvenience to Plaintiff. Particularly near or during holidays." (R. 20-1, FAC ¶¶ 13,15.)

Loyola's decision to change Plaintiff's working hours from first shift to second shift does not rise to the level of an adverse employment action. Plaintiff's pay and job title remained the same, and she suffered no significantly diminished job responsibilities. Plaintiff offers no support for the proposition that a mere transfer from first to second shift, unaccompanied by a reduction in pay or significantly diminished job responsibilities, can constitute an adverse action. *Grube,* 257 F.3d at 728 (altered work hours do not qualify as an adverse employment action); *see also Griffin v. Potter,* No. 03-1342, 356 F.3d 824, 2004 WL 193578, at *4 (7th Cir. Feb. 3, 2004) (neither change of shift, lengthened commute, unfair discipline, unfavorable evaluation, difficult assignments, refusal to approve annual leave request, nor denial of parking permit constitutes adverse action). Accordingly, Plaintiff cannot show that Loyola discriminated against her by changing her schedule.

12

### 4. Plaintiff Cannot Show That Murphy Retaliated Against Her

In her unsworn statement, Plaintiff states that she complained to Murphy's supervisor Rose Lach about Murphy's unfair treatment of Plaintiff, and that soon thereafter Murphy changed Plaintiff's shift and told Plaintiff that if she had a problem with her she should not complain to Lach. Plaintiff appears to claim that Murphy changed her shift and issued a verbal warning to her in retaliation for complaining to Lach.[5]

Because Plaintiff has no direct evidence of retaliation, to prevail on her retaliation claim, she must proceed under the *McDonnell Douglas* burden-shifting method. Plaintiff must show that "(1) after lodging a complaint about discrimination, (2) only [she], and not any otherwise similarly situated employee who did not complain, was (3) subjected to an adverse employment action even though (4) [she] was performing [her] job in a satisfactory manner; unless (5) the defendant presents evidence of a reason (good or bad, provided only that it is not one that the law forbids) for the adverse action." *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 642 (7th Cir. 2002). An adverse action is essential for a retaliation claim. *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 899-902 (7th Cir. 2003).

Plaintiff cannot establish a *prima facie* case of retaliation. Plaintiff's retaliation claim

---

[5] The Court notes that Plaintiff does not specifically include a retaliation claim in any count of her FAC. The only reference to a retaliation claim in her FAC is where Plaintiff describes the nature of her claims as, *inter alia*, "retaliation by [sic] Plaintiff in her treatment while employed by Defendant." (R. 20-1, FAC ¶ 1.) Although Plaintiff currently proceeds *pro se*, she was represented by counsel when she filed the FAC. The attorney that initially represented Plaintiff withdrew as her counsel in September 2003. (R. 27-1, Mot. by Pl. for Appointment of Counsel.) The Court appointed counsel on October 1, 2003 (R. 29-1, Order), but he withdrew on October 14, 2003. (R. 32-1, Order.) The Court appointed another attorney to represent Plaintiff (R. 32-1, Order), but he withdrew on March 17, 2004 (R. 43-1, Mot. to Withdraw; R. 44-1, Order), before Plaintiff filed her opposition to summary judgment.

fails with respect to the verbal warning because the verbal warning was not an adverse employment action, and because Plaintiff was not performing according to Loyola's expectations at the time it issued. Plaintiff's retaliation claim fails with respect to the shift change because the shift change is not an adverse employment action. Accordingly, summary judgment is granted in favor of Loyola as to Count I.[6]

## II. Plaintiff Cannot Prevail On Her Breach Of Contract Claim

In Count II Plaintiff claims that Loyola "entered into an implied and constructive contract, wherein they explicitly agreed that if Plaintiff provided Defendant with appropriate service, Defendant would provide Plaintiff with employment without a hostile work environment." (R. 20-1, FAC ¶ 31.) Plaintiff has provided no facts or legal argument in support of this assertion. In light of the undisputed facts, Plaintiff's breach of contract claim does not survive summary judgment.

A cause of action for breach of contract for failure to provide a particular benefit may arise where an employer makes explicit promises to employees about particular working conditions, such as fair discharge procedures or pay for unused sick days. *Wexler v. Morrison Knudsen Corp.*, No. 99 C 6522, 2000 WL 1720344, at *5 (N.D. Ill. Nov. 15, 2000) (citing

---

[6] Plaintiff further appears to claim that Loyola discriminated against her in violation of Section 1981 by failing to re-hire her. (Although Plaintiff never specifically alleges this claim, Loyola addresses the facts that might relate to such a claim.) To survive summary judgment on this claim, Plaintiff must establish that (1) she belongs to a racial minority; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) despite her qualifications, she was rejected; and (4) the position was given to someone of a different race who had similar or lesser qualifications. *Malacara v. City of Madison*, 224 F.3d 727, 729 (7th Cir. 2000). Plaintiff's claim of failure to rehire—to the extent that she actually asserts such a claim—fails because it is undisputed that Loyola only hired minorities and non-minorties who were more qualified for the positions than Plaintiff. (R. 40-1, Def.'s Rule 56.1 Stmt. ¶¶ 65-70.)

*Duldulao v. Saint Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 318 (Ill. 1987)). In this case, however, there is no evidence that Loyola promised employees "tangible benefits" or "clearly promised property interests." Rather, the evidence shows that Loyola's policies simply reflected summaries of existing federal and state anti-discrimination law. Plaintiff cannot base a breach of contract claim on the intangible condition of working free of a hostile work environment. *See Wexler*, 2000 WL 1720344, at *5 (granting summary judgment in favor of defendant where plaintiff based his breach of contract claim on the "intangible condition of working free from retaliation," and noting that "[o]ur legal system boasts an extensive regime under Title VII that would have been better suited to Plaintiff's retaliation claim.")

In any event, Plaintiff's underlying hostile work environment claim fails on the merits because there is no evidence to support an inference that Loyola subjected her to an objectively hostile work environment. To survive summary judgment on a hostile work environment claim, "a plaintiff must present evidence that would establish that the allegedly hostile conduct was so severe or pervasive as to create an abusive working environment in violation of Title VII." *Robinson v. Sappington*, 351 F.3d 317, 329 (7th Cir. 2003) (quoting *Russell v. Board of Trs. of the Univ. of Ill. at Chicago*, 243 F.3d 336, 342-43 (7th Cir. 2001)). "Title VII protects a worker against conduct which is sufficiently severe or pervasive that a reasonable person would find it hostile and which the victim himself subjectively sees as abusive." *Ngeunjuntr v. Metropolitan Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir. 1998) (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 114 S. Ct. 367 (1993)). "The workplace that is actionable is the one that is 'hellish.'" *Logan v. Kautex Textron N. Am.*, 259 F.3d 635, 641 (7th Cir. 2001) (citation omitted).

In her unsworn statement, Plaintiff complains that Murphy "would discredit me in front

15

of both co-workers, patients and visitors in the unit. She would accuse me of things out of order at my position without first obtaining the correct information. She would just constantly verbally harass me. She has also threatened me with discharge when I tried to talk to her regarding her treatment of me." Plaintiff does not claim that Murphy—or anyone else at Loyola—ever made race-based comments to Plaintiff.

It is clear that no reasonable jury could conclude that Loyola subjected Plaintiff to an objectively hostile work environment. First, Plaintiff has failed to present any evidence that Murphy actually made these statements, other than her own unsworn, improperly submitted statement. Second, even if Plaintiff could demonstrate that Murphy made the statements, such statements were not physically threatening, and there is no evidence that the comments affected Plaintiff's ability to do her job. There is simply no evidence from which a reasonable jury could conclude that Loyola subjected Plaintiff to a hostile work environment. Accordingly, summary judgment is granted in favor of Loyola as to Count II.

### III. Plaintiff Has Abandoned Her Intentional Infliction Of Emotional Distress Claim

Plaintiff does not dispute that she abandoned her intentional infliction of emotional distress claim. (R. 40-1, Def.'s Rule 56.1 Stmt. ¶ 97.) Plaintiff has submitted no evidence or argument in support of this claim, and there is no evidence in the record before the Court that would support such a claim. Accordingly, summary judgment is granted in favor of Loyola as to Count III.

## CONCLUSION

The Court grants Loyola's motion for summary judgment in its entirety. Summary judgment is granted in favor of Loyola as to Count I (racial discrimination) because Plaintiff has no direct evidence of discrimination and cannot establish a *prima facie* case of discrimination. Summary judgment is granted in favor of Loyola as to Count II (breach of contract) because Plaintiff has failed to establish that Loyola's employment policies created an enforceable contract right to be free from a hostile work environment, and in any event, there is no evidence that Loyola subjected Plaintiff to an objectively hostile work environment. Summary judgment is granted in favor of Loyola as to Count III (intentional infliction of emotional distress) because it is undisputed that Plaintiff has abandoned this claim.

DATED: June 2, 2004

_____
AMY J. ST. EVE
United States District Court Judge